UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY W. DILLON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 9165 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| VILLAGE OF FLOSSMOOR, a "municipal corporation;" MAYOR PAUL BRAUN; BRIAN DRISCOLL, PERRY HOAG, PHILIP MINGA, JAMES MITROS, JAMES WILDER, DIANE WILLIAMS, and JONI SCOTT, as Village Trustees; SCOTT DILLNER, Village Attorney; SCOTT BUGNER, Zoning Director; DAN ABDO; GLAZIER CORPORATION; and MEJIER'S INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER

The Court grants Defendants Village of Flossmoor, Mayor Paul Braun, Brian Driscoll, Perry Hoag, Philip Minga, James Mitros, James Wilder, Diane Williams, and Joni Scott, Scott Dillner, Scott Bugner, Dan Abdo, Glazier Corporation and Meijer, Inc.'s motions to dismiss [23, 26, & 27] on the basis that Plaintiff Jerry W. Dillon lacks prudential standing pursuant to Federal Rule of Civil Procedure 17(a). See Statement for more details.

## STATEMENT

Plaintiff Jerry W. Dillon brings a number of claims against Defendants Village of Flossmoor ("Flossmoor"), Mayor Paul Braun, Brian Driscoll, Perry Hoag, Philip Minga, James Mitros, James Wilder, Diane Williams, and Joni Scott, Scott Dillner, Scott Bugner, Dan Abdo, Glazier Corporation ("Glazier") and Meijer, Inc. ("Meijer") (collectively, "Defendants"). All of the claims center over the ownership of property commonly known as 3608 Vollmer Road, Flossmoor, Cook County, Illinois (the "Property"). According to Dillon, Defendants entered into an "alliance" in 2014 with the goal of developing property along Vollmer Road in Flossmoor, including the Property. In their pursuit of that goal, Dillon alleges that Defendants (1) violated the public trust, (2) tortiously interfered with contracts between him and potential buyers, (3) committed RICO violations, and (4) violated Dillon's Fourteenth Amendment rights and violated 42 U.S.C. § 1981.

Defendants have filed three different motions to dismiss, arguing that the Court should dismiss Dillon's second amended complaint on a variety of grounds. Because the Court finds

that Dillon lacks prudential standing to pursue claims about the Property, it only addresses Defendants' arguments regarding standing.

The details in the second amended complaint and the motion to dismiss briefing caused considerable confusion regarding who actually owned the Property during the time period relevant to the second amended complaint (which itself was not entirely clear). All parties agree that the last deed to the Property recorded by the Cook County Recorder of Deeds lists D & M Enterprises of Illinois, Ltd. ("D & M") as the titleholder.[1] *See* Doc. 34 at 3; Doc. 23 at Ex. A. D & M was an Illinois corporation. However, the Illinois Secretary of State dissolved D & M on October 12, 2012. *See* Doc. 34 at 7; Doc. 38 Ex. 1. Dillon asserts that this action "gave Dillon 100% ownership of dealings and property associated with" D & M. Doc. 34 at 7. However, although Dillon asserted that he was one of the shareholders of D & M, *id.* at 5, he provided no support for this claim. In light of the confusion, the Court requested at an August 7, 2018 status hearing that the parties provide supplemental briefing regarding who owned the Property during the relevant time period described in the second amended complaint.

Dillon's supplemental briefing only muddied the waters further. Although he represented in his response to the motions to dismiss that he and Frank Martin were the shareholders of D & M, *id.*, Dillon changed his tune in his supplemental briefing and stated that Dillon Dental Services, Ltd.[2] ("Dillon Dental") owned D & M. Doc. 42 at 2. Dillon further stated that he is the sole shareholder of Dillon Dental and that Dillon Dental received "100% ownership of dealings and property associated with" D & M during the winding down process of D & M. What is clear from Dillon's supplemental briefing is that Dillon does not claim that he as an individual ever owned the Property.

Two different types of standing are at issue here: jurisdictional standing and prudential standing. Pursuant to Article III of the Constitution, federal courts only have jurisdiction over cases and controversies. *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (2012). To satisfy the requirements of Article III standing, a party must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Generally, shareholders who have alleged injury to their corporation have satisfied the requirements of constitutional standing by virtue of the indirect injury they suffer as shareholders. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008). It is possible, based on Dillon's unsupported statement that he is the sole shareholder of Dillon Dental, that Dillon could meet the requirements of constitutional standing if Dillon Dental owned the Property during the time period relevant to the second amended

---

[1] Dillon and Flossmoor both note that the last deed is Document No. 0020689831, which it is, but also note that it is dated June 11, 2002. This appears to be a typo—the deed is dated June 20, 2002.

[2] Dillon refers to Dillon Dental as "Dillon Dental Services, LLC." However, as Defendants point out, the Illinois Secretary of State's website does not list an LLC by that name, but it does list a corporation named Dillon Dental Services, Ltd. *See* https://www.ilsos.gov/corporatellc/CorporateLlcController (accessed Sept. 17, 2018). This is consistent with Dillon's assertion that he is a shareholder, rather than a member, of Dillon Dental, and so the Court presumes that the use of "LLC" is a typo.

complaint. Because the Court finds that Dillon does not meet the requirements of prudential standing, it declines to delve into this analysis.

"In addition to constitutional-standing requirements, however, there are prudential limitations on a federal court's power to hear cases." *Id.* One such limitation holds that "a litigant cannot sue in federal court to enforce the rights of third parties." *Id.* at 757. Federal Rule of Civil Procedure 17 codifies this rule by generally requiring that one prosecute an action in the name of the real party in interest. Fed. R. Civ. P. 17(a). More specifically, a shareholder cannot sue for indirect harm that he suffers from an injury to the corporation. *Nocula v. UGS Corp.*, 520 F.3d 719, 726 (7th Cir. 2008). There are exceptions to this rule, however: "cases in which corporate management has refused to pursue the action for reasons unrelated to good-faith business judgment, or when the shareholder has suffered a direct, personal injury not derivative of the corporation's, or a special contractual duty exists." *Id.*

Here, regardless of whether D & M or Dillon Dental was the titleholder of the Property, Dillon himself is not the party in interest. It is only one of the corporations that would have suffered directly any damage from Defendants' interference with the sale of the Property. The exceptions to the general rule that shareholders cannot sue on behalf of their corporations do not apply here. In his response, Dillon argues that, as the majority owner of D & M, he should be able to bring suit on behalf of his corporation.[3] Dillon appears to reiterate a similar argument regarding Dillon Dental in his supplemental briefing. However, that is not an exception—even a sole shareholder cannot bring suit on behalf of his corporation if he does not meet one of the exceptions to the shareholder standing rule. *See Nocula*, 520 F.3d at 726 (finding that a sole shareholder lacked standing to bring claims on behalf of his corporation). Dillon does not indicate that D & W's or Dillon Dental's management has refused to bring suit, he does not argue that he has suffered a direct, personal injury not derivative of the corporations', and he does not state that a special contractual duty exists. Dillon's focus on the "zone of interests" requirement of prudential standing in his supplemental briefing does not circumvent the fact that he is not a party in interest. Simply put, Dillon has not even argued that he as an individual ever owned the Property, and he does not satisfy any of the exceptions that would allow him to continue the suit in spite of his lack of ownership.

Dillon also notes Rule 17(a)(3), which requires that the Court wait a reasonable period of time for the real party in interest to ratify, join, or be substituted into the action. Fed. R. Civ. P. 17(a)(3). But this action was first filed in December 2017. The complaint has been amended twice, and Dillon has had notice of this party in interest argument since at least February of this year when Meijer filed its motion. The Court even specifically gave Dillon the opportunity to supplement the record. However, other than a brief mention in his response to the motions to dismiss, Dillon has taken no steps to substitute the real party in interest and has made no indication that one of the corporations intends to substitute in his place—he has not even been able to clearly identify to the Court who owned the Property during the time period relevant to the second amended complaint. In light of this, the Court declines to give Dillon additional time

---

[3] Dillon wraps this argument up in a general discussion of shareholder derivative suits, but it is clear that a derivative suit is not appropriate here from Dillon's own arguments. He states that he has "majority rights and decision-making powers" over D & M, Doc. 34 at 6, and that he is the sole shareholder of Dillon Dental, Doc. 42 at 2; thus, a derivative suit would be unnecessary.

to substitute a real party in interest. *See, e.g., Nationwide Acceptance Corp. v. Markoff, Krasny, Goldman, Grant*, No. 99 C 5632, 2000 WL 1230434, at *4 (N.D. Ill. Aug. 23, 2000) (determining that plaintiff's failure to join real party after seven months was unreasonable delay).

      For the foregoing reasons, the Court grants Defendants' motions to dismiss [23, 26, & 27], and the Court dismisses Dillon's second amended complaint [9].


Date: September 19, 2018                                        /s/Sara L. Ellis